Mr. Bell. May it please the Court. In this appeal we submit that the Board's decision on 123 Patton should be vacated and remanded, and I'd like to focus on one principal issue, which I think takes it out of the mind run of cases where substantial evidence is being challenged, and that is specifically the notion that the Board acted arbitrarily and capriciously. We think the Board's finding in this case is directly at odds with a finding it made in a prior IPR involving the exact same combination of references and the exact same components within that combination. So your understanding in this just the old IPR, the Board literally made a fact-finding that there would be a particular motivation to combine certain elements of these two references when that was not an issue presented in that case? It did not make an ultimate fact-finding about the motivation to combine in this way, but what it did do is make a fact-finding that supported its rationale for rejecting the motivation to combine and the way that Reynolds proposed to combine it in that case. If I could speak a little bit about that. In the prior IPR, the Board found that it would be a simple substitution to remove the entire atomizer upon, including the porous body around it and the cavity within it and the ultimate atomizing element within it, and replace that with the wick and wire configuration found in the Whitmore patent. Now the reason that was important was because Reynolds was proposing something slightly different, significantly different in fact. It was proposing to take the wick and wire of Whitmore and just sub it in for the wire part of the Hahn atomizer. And what the Board said was that would be redundant. You wouldn't do that. No POSA would do that. Instead, and the reason it rejected that combination, what would be a simple substitution it said would be to remove the entire atomizer. And that makes sense. It was a different mechanism. So the Board was keying off of something that the patent owner's expert had said, right? Correct. I believe the patent owner's expert had said, look, you wouldn't combine these two references at all. But if you were to do something, if there were any motivation, it would be to pull out the complete atomizer and swap it in with Whitmore's wick and heater element. But that's not the same thing as saying, yes, there is a motivation to do that complete swap. And I think, so I think, isn't it fair that that is really what the Board was getting at? I think that's certainly. Certainly the proposed combination makes no sense, but maybe a more sensible but not necessarily correct combination would be the one that the patent owner's expert suggested about doing the complete swap. So why isn't that the right, fairest understanding that the Board wasn't going so far to say, wow, this proposal by the patent owner's expert of a complete swap is really attractive. Right. So I think it is fair to say that that's what the expert said. The other question is what the Board actually did with it. And I think all we have to go on there is what the Board said. And this is found at appendix page 2806. And so what the Board said was, we credit patent owner's contention supported by testimony from Mr. Meiss, that's the expert Your Honor was talking about, that a, quote, simple substitution as petitioner proposes would be to remove the entire atomizer in Hahn and replace it, et cetera, et cetera. And it's citing there the patent owner's response at pages 51 to 52. And we've reproduced at our gray brief, page 26, the combination that was credited. And what it shows is it shows Hahn with its atomizer out, and it shows in its place the wick and wire of Whitmore. So perhaps it would be a reasonable way to kind of contort, squint, and view it as not crediting that. But I think what we know is the Board in this case didn't even make an attempt to do that. It didn't attempt to explain it. All it said was it pointed to the last sentence of that expert's testimony that the Board in the prior case block quoted where the expert said these are two completely different things. Well, the reason the expert said that was because they were. And that's why you wouldn't take Reynolds' proposal of mixing and matching parts of it. You would instead take the entire thing and swap it in. Does it matter that the Board didn't have to make this finding? What it was being asked to consider was simply whether replacing the wick and retaining part of Hahn's porous body would be a simple substitution, right? They didn't have to go as far, even assuming that the fact-finding that you're proposing is there is actually there. It's an unnecessary fact-finding, right? I wouldn't characterize it as unnecessary. So the question is kind of, is it dicta? Is it insignificant enough that we don't have to worry about the— Well, I was going to ask. I was going to say, assuming it was unnecessary, what impact does that have? Well, I think it was really—and Your Honor is correct. The Board discussed a number of things in its prior decision. But I would submit it was fairly important to the Board's decision to understand that the reason you wouldn't make— the reason a person of ordinary skill wouldn't make the combination proposed was because they would, in fact, make this other combination. So I don't know that we can kind of just tease it out and say, well, that part wasn't important enough. You would have said at most. You would at most, a person of ordinary skill in the arm would have made this other substitution. That would change things, wouldn't it? I would say marginally. Fair enough that it would change the analysis. But what the Board didn't do here is take that on in any fashion. So the Board didn't say, we assume in our prior decision we just meant at most. It didn't attempt to do that. And that's kind of what we're pointing to as the fundamental problem here is if you've got these two things that appear to be at loggerheads, just facially, put them side by side, say simple substitution here, no reason to combine them here, then it's incumbent on the agency under Channery principles and so forth to explain why it's okay to make a different finding here than in the prior one. So that's our— It was the same judge, right, in both cases? Correct. Yes, it was. What do you think about that? Do you feel like because of that they were recognizing that there were, which I'm not saying I agree with, that there might be some type of inconsistency there? What do you think about the fact that there's the same judge? The way I think about it is it actually heightens the problem, not mitigates it in the sense of it was this judge's opinion before, and with all due respect to the judge, we think that they need to explain why they're going to come out some other way to support an agency decision in a new case. So I think it actually makes it worse, not better, and I don't think in any event it excuses it. So I would like to touch very briefly on one other legal issue that we raised, and it is kind of within the third section of our brief, and that is one of the Board's initial rationale. Now, we are moving from arbitrary and capricious to a kind of more traditional overall lack of substantial evidence, but we think within there there is a legal issue that would warrant this Court's scrutiny, and that is the Board's what it called initial rationale for finding evidence to support its conclusion. This is Appendix 27 to 28. Its initial rationale was that PMP, the petitioner, didn't show that using Whitmore's wick and heater would be better, quote, as compared with the modifications Hahn expressly teaches. And we would submit that the Board kind of got a little hung up on here on the fact that Hahn does propose certain things as different ways to improve it, but under this Court's decision in Fulton and in Doan-Patton, for example, the fact that there are certain ways of improving things, even let's assume it's a superior way. Let's assume Hahn explains a great way to improve it. That doesn't per se mean you should kind of disregard other options. And so the fact that it was the Board's initial rationale, I think if that legal issue is recognized, would warrant sending it back for the Board to consider without making that legal error. But certainly we think the overarching theme here and the principle argument we're making is this about face that I think the Board did. And so for that reason and the others we've detailed in our brief, we would respectfully ask the Court to vacate and remain. Okay. So is it the sentence at the bottom of A27 that's bothering you? The as compared to language, Your Honor. But frankly, I think even if it wasn't necessarily as compared to, in other words, it didn't require showing a better improvement, it seemed to be, at least as I read it, it seemed to be saying that we're not going to look at whether there's a reason to improve it because it already has one. And I just don't think that's consistent really with the Court's line of cases saying multiple options can be available, they could all be obvious. My understanding of what the Board is trying to say here is that the petitioner, you, had a theory for modifying Hahn that dove into the fact that Hahn itself talks about how the piezoelectric element can be removed. But once you remove that piezoelectric element to simplify the design, you run into performance troubles. And so now you wouldn't want to just stick with the atomizer of Hahn, you'd want to look elsewhere. And once you looked elsewhere, you would find Whitmore, and Whitmore would be an ideal candidate to be able to perform at a level that Hahn's atomizer alone cannot based on the teardown report. But then when the Board looked at the teardown report and said, I'm not really convinced with your story that Whitmore would be an improvement over Hahn with the atomizer alone. So if all of that is supported by substantial evidence, isn't that a fair understanding of what the Board is saying here when it's rejecting your argument? I think ultimately if that's the Court's understanding, then we're not going to win that issue. I think, though, that a fair understanding of our argument was that the section of Hahn that talked about an improvement kind of gave an impetus generally to improve. And you're right, there was one path that we proposed, but I don't think we limited it to that. I think we said there's an impetus to improve based on Hahn's statements, and then the wick and wire of Whitmore would provide a good way to improve it based in part on the thermodynamics involved, which Reynolds' expert testified to in the prior proceeding, and I won't belabor that at that point. But principally for the arbitrary and capricious nature of it, we would ask the Court to vacate and remand so the Board can consider the rest of the issues. Thank you. Thank you, Your Honor. Mr. Cassano. Thank you, Your Honor. And again, may it please the Court, let me take the last issue first very quickly. I think it's unfair to say that the Board made some sort of legal error here in Appendix 27 when all that this has compared with the language is doing is answering the position put forth by Philip Morris that is specifically stated in the last sentence of the prior paragraph. Petitioner goes on to argue that as a result, a person of ordinary skill would have further simplified Hahn's design by replacing Hahn's atomizer with Whitmore's wick and heater. We are not persuaded, the Board says. Petitioner does not show persuasively, that is to say they failed their burden of proof, that replacing Hahn's atomizer with Whitmore's wick and heater would have simplified the device as compared with the modifications Hahn expressly teaches. So they're just answering their own argument. That is not a legal argument, and it's not a reason to find a lack of substantial evidence. With regard to this arbitrary and capricious argument, Appendix 1390, lines 10 to 14. This is the Philip Morris lawyer before the Board. In which case? In this case. In this case. Appendix 1390, Appeal Number 22, 1846. Of course, the Board here is not bound by it. This is referring to the FONTM decision. We've never suggested that, and I want to be crystal clear about that. And the Board can interpret that prior proceeding, of course, however it wishes. And then it goes on to say there are two important things I want to argue to the Board here. And one is about the, it'll put some perspective on the nature of the dispute here, and I think they undermine the factual arguments that the patent owner has tried to make. We often confuse the terms waiver and forfeiture in this court. This is a waiver. This says, Board, you can do whatever you want with this decision. And the Board did that, but the Board didn't just ignore it. The Board gave them ample explanation. So if you, a case they're fond of citing in their briefs, this court's VICOR decision, that was a case involving two reexamination decisions issued by the Board on exactly the same day, involving exactly the same patent, as I recall the facts of that case. And the court found in that case that there was a direct conflict between the Board's fact findings in the two reexaminations, and it was unsupported by any rational explanation. What this court demands in those circumstances is a reasoned explanation for an inconsistent result. Do you actually think there's some inconsistency here? I do not. Okay, can you talk to that too? Well, first of all, it's not a result at all. As Judge Stoll pointed out, this is a superfluous comment made by the Board that says, Well, Reynolds, by the way, we lost the case so there can't be judicial estoppel against us or anything like that. We didn't get any advantage from this. But Reynolds proposed a particular substitution, but it was redundant because it would have had a wick along with porous material. And the Board says, you know, Reynolds, that's not a simple substitution when you're combining Hahn and Whittemore. A simple substitution would be to take out the porous material entirely. But the Board, as Judge Chen pointed out earlier, never made a finding that there was any motivation to combine, or that it was in any sense something that a person of ordinary skill would do there. Simply put, finally, with regard to... Reynolds cited to us at 8-28-06 the Board quoting the expert about how a simple substitution would be to do the complete squash. And thereby, you know, that's classic 103, a simple substitution. Right, and that's the argument that Reynolds' expert made. Right, and the Board at this point, at this juncture in its decision says, we credit his testimony saying, quote, this is a simple substitution. So, I mean, doesn't that at least sound like, in plain language, that the Board is embracing a simple substitution, 103-based theory of doing a complete squash? So, no, not at all. This is saying, in particular, we credit patent owner's contention. That's Fonda, not Reynolds. Supported by testimony from Mr. Meist that a simple substitution, as Petitioner proposes, would be to remove the entire atomizer. Which is to say, don't have redundancy, don't have porous material from Hahn, as well as the wick from the ancient Whittemore reference. It doesn't say that there is even a motivation to combine the two. It would be a simple substitution, but as Judge Stoll said, that's just the Board saying, look, this is unnecessary because we've already rejected what you've proposed, Reynolds. But by the way, we're going to point out that one of the reasons we're rejecting that is, your simple substitution isn't even as simple as a simpler substitution. And that simpler substitution, no one would make that either, as Judge Shinn, you pointed out in your questioning to my friend. Just to be clear, I was just asking questions. I wasn't pointing anything out in particular. But I want to ask you, going back for a minute to what you're reporting on page 81390, I thought that maybe you're about to say that the reason why this is significant is because to the extent there's a requirement of the Board to explain any ambiguity, they didn't have to do so here, given the language that you've cited on page 81390. Is that what you're saying? Well, that's right, but the Board did that anyway. The Board gave them three pages of explanation as to why it didn't find anything in the FONTA decision that was going to have any effect on this, because we've rejected it. They've already earlier rejected the proposed combination on its merits, with evidence, by the way, that is, you know, my friend didn't argue that, but with evidence that is amply substantial and is in fact supported by credibility findings in favor of our expert on the motivation to combine and likelihood of success issues. So this is giving them the process that they're due with regard to the FONTA decision. Can I ask one other question, which is, was there additional evidence, or you might not even know the answer to this, but is there additional evidence in this case for why the proposed modification wouldn't make sense that the Board didn't have privy to in the prior IPR? Well, absolutely. I mean, we defended this allegation of the combination on its merits. The testimony of our expert in this case, Mr. Clements, was not anywhere near the FONTA case. And on top of that, FONTA, again, we lost. The Reynolds entity lost in that case. So if we're talking about something like judicial estoppel and that sort of thing, we're really just talking about an allegation that the most deferential, arbitrary, and capricious standard here was not satisfied when Philip Morris's lawyer said, look, we don't think you're bound by that. We just want you to consider it. That's what they said at that language at 1389 and 1390, I think it is, or I may have miscited, but the language that I read to you earlier. And then the Board gives them the process that they were due. The Board gave them the explanation for why it didn't find this case inconsistent with what was being ruled upon here. There was, of course, a different record. The Board had already by that point in its opinion credited Mr. Clements and rejected their case for combination as being insufficiently supported. Conclusory, I think, was the term that the Board used in one regard there. And honestly, I'm a little taken aback that the Board is now being accused of acting arbitrary and capriciously by doing exactly what Philip Morris's lawyer asked it to do with regard to the FONTA case. Unless the Court has further questions, I'm happy to. Is this the case where there's a Reynolds expert that may have said one thing in the first IPR and then the Reynolds expert arguably said something opposite of that in this IPR? No, I don't think so. The FONTA case had an entirely different expert. Right. I'm not saying that it's the same expert. I don't think there's a- The content of what the prior expert had said is at least in tension with what your current expert is saying here. No, it's only in tension in the sense that we've had the FONTA case. We have lost it. The Board has rejected the notion of the factual submission that our expert made in the RJRB case against FONTA. At that point, why should we have to go back to taking a position that the Board has already rejected as a matter of law? Our expert in this case, in the context of the case that was before it, there was nothing improper, nothing inconsistent at all with regard to his testimony. This is a thin, substantial evidence case. It is being pitched almost entirely on this arbitrary and capricious issue, which, as I said, appellate lawyers often confuse the terms waiver and forfeiture. Forfeiture is not doing the things that are necessary to preserve an issue. This is one where Philip Morris weighed this issue up and down by saying to the Board, you do whatever you want,  and the facts got found against Philip Morris, and they're supported by substantial evidence. They don't make a serious argument to the contrary here that they're not. That's the reason this judgment should be affirmed. Thank you. Okay, thank you. Mr. Bell, can you comment about 81390? The no bound language, or not bound language, of course. The agency is not bound under basic agency law principles. That is absolutely true. But that doesn't mean that it can depart from its prior ruling, and you'll see in the subsequent pages right after that where we focus on that prior ruling as significant. And if the Board is going to depart from it, just under the APA, it has to explain why it did so. Now, did we go on and say, and please don't act arbitrarily and capriciously in your forthcoming decision. We just presumed that the Board would explain why it was going to depart from it if it was going to. You were just saying that we don't have a collateral estoppel argument. Precisely. No sort of, or precedential, of course, doesn't have that either. Not bound in those must-come-out-this-way sense. Now, we think a fair examination of it would lead the Board to come out the same way, and that's why we argued immediately thereafter at 919293 about that particular decision. So in terms of the simple substitution that Your Honor asked, did the Board previously find it would be obvious? Just to clarify, my answer was it didn't actually say those words, but per Judge Chen, your comment, it necessarily follows under KSR that a simple substitution would be obvious. I just wanted to clarify that. And then third, my friend referred to the final sentence of that expert testimony that the Board relied on. The entire explanation, although contained within a couple of pages, boils down to saying that final sentence in that prior IPR, and remember, this was testimony that that prior Board had before it, and nonetheless said it would be a simple substitution. And we would say it even stronger, not nonetheless, but because of that final sentence, it was different things, and that's why you would make the entire substitution of Hans Ademiser, not just a portion of it. And then finally, as to the inconsistency, we would respectfully submit that there is a very clear inconsistency between the expert in this case and the expert in the prior case, admittedly different experts. So we're in a slightly different world than Ultratech, for example. But we would submit that it still should impact, or at least the Board needs to explain the impact of its credibility, and I think the Court will examine for itself and hopefully conclude that there was an inconsistency. We laid out a chart at page 26 of our opening brief. In one case, their expert said Hahn is inefficient. In the other case, said it is efficient. In one case, said Whitmore is more efficient than Hahn. In the other case, said the opposite. So this kind of finding a new expert to come up with a new opinion should at least factor into the Board's decision, and for that and the other reasons we've discussed, we suggest the Court vacate and remand. Okay. Thank you, Mr. Bell. The case is submitted.